UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **BOBBY H.,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )   Case No. 21-CV-217-CDL |
| | ) |
| **KILOLO KIJAKAZI,** | ) |
| **Acting Commissioner of the** | ) |
| **Social Security Administration,** | ) |
| | ) |
|     **Defendant.** | ) |

**OPINION AND ORDER**

Plaintiff seeks judicial review under 42 U.S.C. § 405(g) of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. The parties have consented to proceed before a Magistrate Judge in accordance with 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is **affirmed**.

**I.      Legal Standards**

   **A.      Standard of Review**

The Social Security Act (Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See id*. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (quoting *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

### B.   Five-Step Agency Process

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner determines whether the claimant is engaged in substantial gainful activity. At step two, the Commissioner determines whether the claimant has an impairment or a combination of impairments that is severe. At step three, the Commissioner determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are

so severe as to preclude substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpt. P, App'x 1 (Listings). At step four, the claimant must show that her impairment or combination of impairments prevents her from performing her previous work. The claimant bears the burden on steps one through four. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, in light of the claimant's age, education, and work experience. 20 C.F.R. § 1520(a)(4)(v).

## II.   Procedural History

Plaintiff filed for Title II disability benefits on January 30, 2019, alleging that he became disabled on December 20, 2017, when he was 38 years old. (R. 15, 69). He alleged disability due to bipolar disorder, anxiety, panic disorder, and coronary artery disease. (R. 69). Before his alleged disability onset date, plaintiff worked as an auto mechanic and service technician. (R. 28).

Plaintiff's claim was denied initially and on reconsideration. He requested a hearing with an Administrative Law Judge (ALJ), who held a hearing via telephone on November 9, 2020, with Plaintiff's consent to proceed via telephone. (R. 15). Plaintiff was represented by counsel, and a vocational expert (VE) testified at the hearing. (R. 35-66).

The ALJ denied benefits in a decision dated November 27, 2020. (R. 12-34). In a decision dated March 17, 2021, the Appeals Council denied plaintiff's request for review

of the ALJ's decision. (R. 1-6). As a result, the ALJ's November 27, 2020 decision became the final decision of the Commissioner. (*See* R. 1). Plaintiff then timely appealed to the district court.

### III.   The ALJ's Decision

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset date of December 20, 2017. (R. 18). At step two, the ALJ found that plaintiff suffers from the following severe impairments: congestive heart failure, depressive disorder, and anxiety disorder. *Id*.

At step three, the ALJ determined that plaintiff's impairments do not meet or medically equal the criteria for any Listing under 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. Applying the required psychiatric review technique, the ALJ found that plaintiff has a moderate impairment in each of the four "paragraph B" areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 18-19; *see* 20 C.F.R. § 404 Subpt. P App'x 1).

The ALJ found that plaintiff has the residual functional capacity (RFC) to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except with additional limitations. The [plaintiff] is able to lift and/or carry, and push and/or pull, twenty pounds occasionally and ten pounds frequently. The [plaintiff] is able to stand and/or walk six hours out of an eight-hour workday and sit six hours out of an eight-hour workday, all with normal breaks. The [plaintiff] is able to perform work requiring occasional stooping. The [plaintiff] is able to perform simple, routine tasks, with a specific vocational preparation (SVP) of one to two. The [plaintiff] is unable to perform work requiring contact with the public.

(R. 20-21).

The ALJ discussed the medical and other evidence in the record supporting the RFC determination, including physical and mental health treatment notes from December 2017 to May 2020. On December 21, 2017, Zoobia Mirza, D.O., treated plaintiff for follow-up on his mental health treatment. Plaintiff reported that he was not receiving counseling, but that Latuda was "very helpful" in preventing depression. (R. 22). Plaintiff reported anxiety but denied panic. *Id*. He was cooperative, with fair attention, normal awareness of surroundings, and appropriate affect, although his mood was anxious at times. *Id*.

The ALJ's decision addressed the medical opinions of treating physician Weldon Mallgren, D.O. and consultative examiner Heather Ranger Kobel, Ph.D. (R. 27).[1] Dr. Mallgren completed a Mental Functional Assessment Questionnaire dated May 16, 2019. (R. 1665-1666). As discussed in the ALJ's decision, Dr. Mallgren indicated that plaintiff reported depressed mood, mood swings, anxiety and panic attacks, and indicated that his anxiety and prior heart attack "hinder[] him from working." (R. 1665; *see* R. 27). Dr. Mallgren noted plaintiff "reported that his depression caused him to not want to be around anyone, which further interfered with his role as an employee." (R. 27). However, the ALJ found these statements not to be persuasive, noting that they were "entirely based on [plaintiff's] report." *Id*.

---

[1] The issues raised on appeal are limited to the mental RFC determination; accordingly, the discussion herein focuses on evidence relating to plaintiff's mental impairments.

Dr. Kobel examined plaintiff on July 8, 2019, noting that he was pleasant, cooperative, and in good spirits. *Id*. Plaintiff described his academic performance as "pretty good." *Id*. On mental status examination, plaintiff

> presented as euthymic, with a full range of affect. The claimant was alert and fully oriented. [Plaintiff] was able to read, write and comprehend as evidence by his ability to accurately complete screening forms. [Plaintiff] exhibited adequate comprehension, attention and concentration. He was able to follow basic, three-step instructions. His speech was normal in rate, rhythm and tone. . . . [Plaintiff] made appropriate eye contact and his attitude was very cooperative. He denied experiencing hallucinations or thought disorder, and there was no evidence of such at the time of examination. [Plaintiff's] intelligence was estimated to be average. [Plaintiff] provided appropriate responses to questions related to judgment, insight and abstraction. [He] was able to perform Serial Sevens, very quickly providing four correct solutions.

*Id*. Dr. Kobel administered the Montreal Cognitive Assessment (MoCA), assessing a score of 28, which the ALJ found "suggestive of a normal level of cognitive functioning." *Id*. The ALJ assessed Dr. Kobel's findings as "persuasive" and supportive of an RFC for simple, routine tasks, with a SVP of 1 to 2. *Id*. Dr. Kobel's findings were also "persuasive in the finding that [plaintiff] is unable to perform work involving public contact." *Id*.

At step four, the ALJ concluded that Plaintiff is unable to perform his past relevant work as actually or generally performed. (R. 28). At step five, citing the hearing testimony of the VE, the ALJ found that there are other jobs existing in significant numbers in the national economy that plaintiff can perform, including:

> ***Laundry sorter***, light exertion, unskilled work, SVP 2, DOT Code # 361.687-014, with approximately 110,000 such jobs within the national economy;

>*Assembler*, light exertion, unskilled work with a SVP of 2, DOT Code # 706.684-022, with approximately 94,000 such jobs; and
>
>*Folder*, light exertion unskilled work with a SVP of 2, DOT Code # 369.687-018, with approximately 84,000 such jobs.

(*See* R. 28-29). Thus, the ALJ concluded at step five that Plaintiff is not disabled. *Id*.

## IV. Discussion

Plaintiff argues that (1) the ALJ failed to properly consider evidence supporting additional social interaction limitations in the RFC, and (2) the RFC did not adequately account for plaintiff's severe panic attacks.

### A. Social Interaction

In determining a claimant's RFC, "[t]he record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting [the] decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)); *see also Bigpond v. Astrue*, 280 F. App'x 716, 718, 2008 WL 2222016 (10th Cir. 2008).

Plaintiff argues that the evidence warranted further RFC limitations in social interaction—specifically, additional limitations to plaintiff's ability to interact with supervisors and co-workers. Based on a review of plaintiff's records, two state agency reviewing psychologists assessed plaintiff's mental RFC (MRFC). On the agency's standard eCAT MRFC assessment form, both Laura Eckert, Ph.D. and Debby Doughty, Ph.D. assessed, *inter alia*, a moderate limitation in plaintiff's ability to get along with co-

7

workers or peers without being distracted by them or exhibiting behavioral extremes. (*See* R. 107, 158). Both reviewing psychologists also assessed a moderate limitation in plaintiff's ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. (R. 107, 158).

Dr. Eckert and Dr. Doughty provided narrative explanations for their mental RFC findings. Both reviewing psychologists opined that plaintiff is "able to understand, recall[,] and perform simple and some detailed (1-3 step) but not complex tasks[] and make related judgments . . . [,] able to focus for two hour periods with routine breaks and pace and persist for [an] 8[-]hour work day and 40[-]hour work week," despite his psychological symptoms. (R. 108, 158). Additionally, both opined that plaintiff is "unable to interact appropriately or tolerate contact with the public." *Id*. Both consultants also found that plaintiff "is able to adapt to [a] work setting and some changes in the work setting." *Id*. Neither Dr. Eckert nor Dr. Doughty assessed any further social interactive restrictions.

The ALJ considered the reviewing psychologists' opinions and found them "not as persuasive as the findings of Dr. Kobel . . . ." (R. 25-26). As set forth *supra* Part III, the ALJ found that Dr. Kobel's opinion supported an RFC for simple, routine tasks, at SVP level one to two, with no contact with the public. (*See* R. 27). With respect to social interaction, the ALJ's RFC determination is consistent with the mental RFC findings of the reviewing psychologists. As such, the ALJ did not have to reject the reviewing examiners' opinions in order to assess the mental RFC. Where—as here—the "ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened." *Howard v. Barnhart,* 379 F.3d 945, 947 (10th Cir. 2004).

8

Plaintiff argues that the opinions of Dr. Eckert and Dr. Doughty are "internally inconsistent" because they assessed a mental RFC that did not impose further limitations in social interaction. (Doc. 12 at 6). The Court disagrees. As set forth above, both reviewing psychologists provided detailed explanations of their mental RFC findings.

The narrative explanation provided by the reviewing consultants reasonably addresses the detailed mental assessment findings. While both reviewing psychologists assigned no limitation in interacting with co-workers or supervisors, they found plaintiff should not be required to perform tasks involving "in-depth multilayer decision-making" or to supervise others, among other restrictions. (R. 108, 158). These detailed RFC conditions, which also exclude any work requiring interaction with the public, reasonably reflect the moderate limitations assessed in the reviewing psychologists' detailed MRFC findings. *See Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016); *see also Lee v. Colvin*, 631 F. App'x 538, 541-42 (10th Cir. 2015) (unpublished) (explaining that function-by-function MRFC assessment is a "worksheet to ensure the psychiatrist or psychologist has considered each of these pertinent mental activities and the claimant's . . . degree of limitation," but that "it is the [MRFC] narrative . . . that adjudicators are to use in their assessment of RFC."); *Fulton v. Colvin*, 631 F. App'x. 498, 502 (10th Cir. 2015) (unpublished) ("Where a psychologist's [MRFC] narrative does not contradict any [detailed MRFC] limitations and describes the effect each [function-by-function] limitation would have on the claimant's mental RFC, the ALJ may properly look to only the Section

9

III narrative as the psychologist's opinion regarding mental RFC.").[2] As such, the ALJ had no duty to further address the reviewing psychologists' MRFC assessments. *See Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) ("[T]he ALJ accounted for [the claimant's] moderate concentration, persistence, and pace problems in his RFC assessment by limiting him to unskilled work.").

### B. Panic Attacks

Plaintiff contends the ALJ failed to adequately address evidence of his panic attacks. He points to medical evidence of multiple hospital visits resulting from panic attacks and contends the ALJ improperly failed to consider whether the severity of these panic attacks precludes his ability to complete even simple, unskilled labor. Plaintiff argues that his panic attacks may require further RFC limitations, such as the ability to take unscheduled breaks or to miss work without notice or explanation. (*See* Doc. 12 at 10).

The ALJ's decision acknowledged plaintiff's reported panic attacks, which allegedly prevent him from going out alone, driving a car, or working. (*See* R. 19-22). However, plaintiff denied experiencing panic when seen by Dr. Mirza on December 21, 2017. (R. 22; *see* R. 1012). The ALJ also considered Dr. Mallgren's notes relating plaintiff's report of panic attacks and other symptoms that reportedly interfere with his ability to work. (*See* R. 27). The ALJ explained that these statements were not persuasive because they were based entirely on plaintiff's report and are inconsistent with his mental

---

[2] Under 10th Cir. R. 32.1(A), "[u]npublished decisions are not precedential, but may be cited for their persuasive value."

health treatment records from Grand Lake Mental Health Center and with Dr. Kobel's consultative examination findings. *Id*.

Plaintiff relies on his hearing testimony and subjective written statements about his symptoms. However, a claimant's subjective complaints of pain or other symptoms, alone, cannot establish disability. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a). Rather, "[t]he burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability." *Branum v. Barnhart,* 385 F.3d 1268, 1271 (10th Cir. 2004). Moreover, the focus of disability determination is on the functional consequences of a condition, not the mere diagnosis. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (noting that an ALJ's failure to include an alleged limitation in the RFC is not error if the limitation is not supported by the medical record; *see also Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000) (affirming where, *inter alia*, claimant had not "directed [the court's] attention to any medical evidence that was disregarded" related to alleged functional limitation).

Here, no physician or psychologist opined that plaintiff's panic attacks require limitations beyond those included in the RFC determination. Plaintiff has not pointed to other substantial evidence that the ALJ ignored, nor has the Court's review of the record revealed such evidence. Moreover, substantial evidence supports the ALJ's determination that plaintiff's panic attacks did not require additional restrictions in the RFC. Dr. Kobel's CE report indicated that plaintiff was in "good spirits," despite reporting continued panic attacks. Plaintiff also visited Julie Finney, P.A.-C, with Grand Lake Mental Health Center,

11

reporting on January 9, 2019 that his anxiety was "much better" and had improved with Lithium and Latuda. (R. 23).

On March 12, 2019, plaintiff reported to Ms. Finney that his social anxiety was "more troublesome," but during a follow-up appointment June 25, 2019, plaintiff rated his anxiety at two out of ten and depression at zero out of ten. (R. 24). Although plaintiff complained of anxiety, his affect was appropriate, and he was cooperative. *Id*. Plaintiff also denied fever, fatigue, weakness, trouble sleeping, dry mouth, weight change, visual disturbance, chest pain (except for occasional palpitations), nausea, vomiting, sense of danger, thoughts of violence, memory loss, mood swings, hallucinations, frightening visions or sounds, and psychosis. *Id*. Plaintiff's mental health treatment notes throughout the record show largely normal mental status examinations. (*See, e.g.*, R. 996-1021; 1493-1580; 1673-1713).

As such, substantial evidence supports the mental RFC determination.[3] Furthermore, as set forth above, the ALJ provided good reasons for discounting subjective reports regarding panic attacks, and nothing further was required as to those statements.

---

[3] Plaintiff argues that the ALJ erred further in failing to include limitations based on plaintiff's panic attacks in the hypothetical presented to the VE. (*See* Doc. 12 at 11). However, the hypothetical need only reflect the limitations found to exist by the ALJ. *See Evans v. Chater*, 55 F.3d 530, 532 (10th Cir.1995) (noting "the established rule that such inquiries must include all (and only) those impairments borne out by the evidentiary record"). Accordingly, this argument is rejected.

## V. Conclusion

For the reasons set forth above, the Court finds the ALJ's decision is supported by substantial evidence and reflects application of the proper legal standards. Accordingly, the decision of the Commissioner finding Plaintiff not disabled is **affirmed**.

**SO ORDERED** this 30th day of September, 2022.

*Christine D. Little*
Christine D. Little
United States Magistrate Judge